**William R. CRUISE and David B. Belasco et al.**

v.

**CAPITOL INTERNATIONAL AIRWAYS, INC., et al.**

**Civ. A. No. 74-1199.**

United States District Court,
E. D. Pennsylvania.

June 16, 1975.

Nicholas T. Long, Edwin D. Wolf, Shelly Stark, Philadelphia, Pa., for plaintiffs.

G. Wayne Renneisen, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

We are presently faced with two summary judgment motions[1] on a limited issue in this case, namely, did defendants discriminate against men in hiring flight attendants after May 17, 1974? The Court has already found that de-fendants so discriminated prior to May 17, 1974. Memorandum and Order dated January 15, 1975. The issue is whether the uncontroverted facts show that defendants persisted in sex discrimination in carrying out the reconsideration of male job applicants ordered by this Court. We find that the undisputed facts establish that defendant Capitol Airways did discriminate against men, in violation of 42 U.S.C. § 2000e–2(a) and this Court's Order dated July 2, 1974, and that the entry of summary judgment on this issue is therefore appropriate.

## DISCUSSION

Defendant Capitol Airways is a charter airline which did not employ men as flight attendants from 1964 until after the filing of the present suit. The remaining defendants are officers and/or agents of Capitol Airways. Capitol Airways' busiest months occur in the summer and early fall, and it consequently hires flight attendants in the spring and trains them in one two-week session in May. In preparing for the 1974 summer-fall season, Capitol hired 43 new flight attendants, all females, and scheduled a training session for late May, 1974.

This suit was brought by two men, William Cruise and David Belasco, on behalf of themselves and all other men whom defendants denied employment as flight attendants solely because of their sex. Plaintiffs' motion for a preliminary injunction against the training of recently hired female flight attendants was heard almost immediately after suit was filed. In lieu of enjoining the training class for the 43 female attendants hired in May, 1974, this Court accepted the agreement of counsel that defendant Capitol would reconsider, on a non-discriminatory basis, the applications of named plaintiffs as well as all

---

[1]. Both plaintiffs and defendants have moved for summary judgment on the issue of defendant Capitol Airways' liability after May 17, 1974. In the alternative defendant Capi-tol alleges that disputed, material questions of fact remain in the case, preventing the entry of summary judgment under Rule 56(c).

other males known to it who had submitted applications for positions as flight attendants.

By a letter dated May 29, 1974, defendant Capitol informed the Court that it had reconsidered and again rejected the applications of plaintiffs Cruise and Belasco, and had not reviewed the applications of any other males because "economic considerations" precluded hiring any additional flight attendants for the 1974 season.

Unimpressed with this performance, we scheduled another hearing and subsequently issued the following Order:

"It is Ordered that the Defendants:

i. Provide new application forms for the job of flight attendants to those males who have previously applied for the job and who request such application forms;

ii. Review such applications, on a non-discriminatory basis, to determine which male applicant's qualifications for the job equal the qualifications of those female applicants accepted for training in 1974; such determination to be made within thirty (30) days of the filing of this Order;

iii. Accept all the above male applicants whose qualifications equal those of the female applicants accepted for training in 1974;

iv. Provide for the holding of a second training class for the benefit of any males accepted under the above procedures, such training class to be held within thirty (30) days of the acceptance of the last male applicant chosen under the above procedures;

v. Hire all male applicants who successfully complete this training course;

vi. Place all male applicants who successfully complete the training course together with all female applicants who successfully completed the training session held in May, 1974, in a pool from which all flight attendant work shall be filled on a non-discriminatory basis;

vii. All seniority, pension and other rights of those males who complete the training course shall be retroactive to the date of completion of the training session held for female applicants in May, 1974."

Thereafter, on July 12, 1974, Capitol sent letters to those males who had previously applied for the position of flight attendant. Enclosed in these letters were new application forms. The letters informed the men that they would have to return filled applications by midnight July 23, 1974 in order to be considered, and that, in addition, each applicant would have to be interviewed. The letter qualified this latter point by stating that:

"if you previously were interviewed in 1974, you may elect to be evaluated on the basis of that interview. Your application will not be rejected merely because you do not appear for a second interview."

However convenient reliance on a prior interview may have seemed, it was a process laden with problems, the first and foremost of which was the fact that the prior interviews were conducted at a time when Capitol, as a matter of policy, refused to hire men. See Memorandum and Order dated January 15, 1975. A second problem was that sometime prior to July 12, 1974, all Capitol's records of its prior interviews of male applicants were destroyed. Therefore not only were the applicants who relied on their prior interview judged as of a time when the defendants discriminated against them but they were judged from memory as well. The capriciousness of relying on the prior interviews is illustrated by the deposition testimony of a Capitol interviewer that interview sheets were often not completed on men because they were not to be hired, as well as the discrepancies between the deposition testimony of two Capitol interviewers concerning how many males had

been rated No. 1 (superior applicant) prior to May 17, 1974.[2]

Capitol sent 61 of these letters to men who had previously applied. In addition, the airline sent 10 applications to men who wished to apply for the first time. New application forms were provided plaintiffs Cruise and Belasco through their attorneys. Altogether 73 men were provided with new application forms. (Capitol offered two men jobs immediately based upon their prior applications and interviews; thus the total number of men contacted by Capitol was 75).

Of these 73 men, 27 did not respond.[3] Of the 40 who submitted applications, 18 were re-interviewed and 10 interviewed for the first time. Six men were considered on the basis of their prior interviews. Four of the 18 men who were re-interviewed were found to be as qualified as the women hired in May, 1974, and were offered jobs by Capitol. One of the ten men interviewed for the first time was offered a job. None of the six men considered on their prior interviews was found qualified nor offered a job.

As a result of this process Capitol extended offers of employment as flight attendants to nine men, five of whom accepted. Shortly after these men were hired, Capitol hired six women as flight attendants.

Capitol's reliance on the prior interviews constituted discrimination on the basis of sex against plaintiffs' class in violation of 42 U.S.C. § 2000e–2(a) and this Court's Order of July 2, 1974, both because these interviews were conducted when defendant Capitol systematically refused to hire men as flight attendants and because the records of these interviews had been destroyed. This latter fact becomes particularly important because it precluded the correction of any discriminatory observations which may have led to unsatisfactory ratings.

The question of the degree, if any, to which this discrimination may have injured specific class members is a question of damages, to be resolved at a hearing on the damage issues.

---

**2.** Defendant and Capitol employee Delehanty testified at deposition that 4 or 5 men were rated No. 1 prior to May 17, 1974; Capitol employee Maas testified that she remembered the number as being between 5 and 6.

**3.** Letters to four men were returned by the Postal Service.